```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF TEXAS
                            SAN ANTONIO DIVISION


UNITED STATES OF AMERICA,       .
                                .
                                .
     vs.                        . DOCKET NO. SA:16-CR-389-XR
                                .
MARK JOSEPH UHLENBROCK,         .
                                .
              DEFENDANT.        .



                TRANSCRIPT OF SENTENCING PROCEEDINGS
              BEFORE THE HONORABLE XAVIER RODRIGUEZ
                    UNITED STATES DISTRICT JUDGE
                            APRIL 3, 2019




APPEARANCES:
FOR THE PLAINTIFF:     SARAH WANNARKA, ESQUIRE
                       UNITED STATES ATTORNEY'S OFFICE
                       601 N.W. LOOP 410, SUITE 600
                       SAN ANTONIO TX 78206

FOR THE DEFENDANT:     ALAN BROWN, ESQUIRE
                       ATTORNEY AT LAW
                       222 MAIN PLAZA
                       SAN ANTONIO TX 78205


REPORTED BY:           GIGI SIMCOX, RMR, CRR
                       OFFICIAL COURT REPORTER
                       UNITED STATES DISTRICT COURT
                       SAN ANTONIO, TEXAS
```

1  *(San Antonio, Texas; April 3, 2019, at 1:30 p.m., in open*
2  *court.)*
3    THE COURT:  16CR389, U.S. versus Mark Joseph
4  Uhlenbrock.
5    MS. WANNARKA:  Sarah Wannarka for the United States.
6    MR. BROWN:  Alan Brown for Mr. Uhlenbrock, your
7  Honor.  I'm not sure I pronounced it correctly.  I apologize
8  to my client, if I didn't.
9    THE COURT:  Mr. Uhlenbrock, we're here on a
10 government motion to revoke your supervised release.  The
11 government is contending you violated the terms of your
12 supervised release in three different ways; you had contact
13 with a minor without prior approval; you were viewing sexually
14 explicit material; and you failed to answer truthfully about
15 your possession and use of a computer on the internet without
16 prior approval.
17   How do you plead to those charges, true, not true?
18   THE DEFENDANT:  True to two of them, but not to the
19 one dealing with contact with a minor.
20   THE COURT:  So we'll proceed on one and three, since
21 those score out the same.
22   Mr. Uhlenbrock, are you satisfied with the
23 representation that Mr. Brown has been providing you?
24   THE DEFENDANT:  Yes, sir.
25   THE COURT:  Are you, today, under the influence of

1  any kind of drugs, alcohol, medication of any kind?
2          THE DEFENDANT:  No, sir.
3          THE COURT:  Mr. Brown, are you satisfied that your
4  client is competent to proceed with today's hearing?
5          MR. BROWN:  Yes, your Honor.
6          THE COURT:  Before accepting your pleas of true,
7  Mr. Uhlenbrock, the government has the burden of proving that
8  you violated your supervisions of condition as charged and I
9  need to read to you these various rights to make sure that you
10 are knowingly giving those up.
11         The government's burden is by a preponderance of the
12 evidence, which means that from the admissible evidence the
13 government must show that it's more likely than not that you
14 violated your supervision as charged.  Your attorney would
15 have the right to challenge any evidence offered by the
16 government, including the right to cross-examine witnesses.
17         Although you would not be required to do so, you
18 would have the right to present evidence and call witnesses of
19 your own.  You would have the right to remain silent or you
20 could testify if you wished.  You would not be required to
21 take the stand in your own defense, and neither the court nor
22 the prosecutor could hold your silence against you.
23         Do you understand that by pleading true you're giving
24 up all of these rights?
25         THE DEFENDANT:  Yes, your Honor.

1        THE COURT:  So do you understand what I told you?
2        THE DEFENDANT:  I do.
3        THE COURT:  Okay.  Has anybody forced you to plead
4  true?
5        THE DEFENDANT:  No, sir.
6        THE COURT:  You are at a Criminal History Category II
7  and a most serious grade of violation C.  You need to
8  understand that although the guideline range is four to ten
9  months of imprisonment, I could place you back into prison for
10 up to 24 months and reimpose supervised release for up to
11 three years.
12       Do you understand?
13       THE DEFENDANT:  I do.
14       THE COURT:  You looked at me as wondering about if
15 the supervised release was incorrect or not?  Okay.
16       The court finds the defendant is competent to enter
17 into a plea, understands the charges in the revocation motion,
18 understands his rights in connection with a contested hearing
19 but knowingly waives those rights, understands the maximum
20 punishments he could receive upon revocation, and a factual
21 basis supports a plea of true.  The court accepts the
22 defendant's plea of true as voluntarily, knowingly, and
23 intelligently entered into, and we'll turn to what the
24 appropriate punishment should be.
25       Mr. Brown.

1 MR. BROWN: Your Honor, he's been in for two months
2 and he came from Missouri. He signed, you know, the voluntary
3 removal. And I think -- I mean, his situation is a little bit
4 different. It's someone who at one time he had a relationship
5 with, and he used a computer. I mean, he has a lawsuit
6 against him also for this. And it was, I guess it was an
7 airline, United Airlines, someone that he knew from there,
8 your Honor, and I hope you go as low as possible, your Honor.
9 THE COURT: Mr. Uhlenbrock, would you like to say
10 anything?
11 THE DEFENDANT: Well, yes, sir. And I'll try to keep
12 it brief.
13 I agree that I did use internet, and that's a
14 violation. I knew that the time -- I didn't look for the
15 opportunity to use it, I actually was going into my computer
16 to make sure that I couldn't access it, that is that to make
17 sure that my son had changed the password.
18 It turned out that he had changed the password, but
19 not on both broadcasts. I didn't know that. And I did take
20 advantage of the time that I had. I did stop on my own. I
21 wasn't happy with myself. I went back to my son and I said,
22 there is something wrong, you need to change the password. He
23 figured it out and I took care of it. I stopped on my own.
24 My group and my therapist seemed to think that's
25 significant. I mean, I'm happy I did it. I'm not happy that

I used the internet, but I'm happy that I stopped on my own.

I told my probation officer actually that I was glad that it happened because I learned. I learned some important things, things that I brought up in my group and in individual therapy that I could work on, and I didn't want to be a person that I didn't like.

In prison I used my time, I think, wisely, and one of the bonuses for me was that I actually learned to like myself again. It had been a long time since I felt that way, particularly what I did to Miss T.

After that, I was very motivated to be as good a client as I could be for my probation officer, and that started with my polygraph. I did a first polygraph on December 18th and I passed it. It was important for me to establish a relationship, one where my probation officer could trust me. And I did that from early December on through the time I was arrested for this.

It's been frustrating for me because my probation officer failed to tell me the rules of probation. I'm not talking about the J&C. I'm familiar with those, which does allow internet access but it has to be monitored, but she did not show up for our first meeting that she set up. She said she would reschedule; she did not.

So when she came to my home and saw my computer on my -- on the ottoman in my living room, I didn't know I

1  couldn't have it.  She said, you can't have that.  And I said,
2  I didn't know that.  She said, well, you signed something a
3  year ago in prison.  And I just thought it was incredulous
4  that she was asking me to remember the rules of supervision
5  based on something I signed a year ago in prison that I needed
6  a copy of.  I still don't have a copy of it.  She's only
7  verbally gone over those, and that was a month and a half
8  after I was started on probation.
9           The -- so I just want to say that I've been very --
10 we didn't talk about this, but I think listed on there was she
11 violated me for using the computer at the social security
12 office.  I don't know what -- well, you didn't mention that,
13 so it kind of makes me wonder.  But, first of all, I don't
14 know how she figured I -- I didn't know that was a rule.  And
15 I really still don't believe that using the computer at the
16 social security office to apply for Medicare would somehow
17 violate my supervised release, but I did use that.
18           After I left the office I used it as an opportunity
19 to call her and let her know what I had done, but really as a
20 way for me to further let her know that I'm trying to be open,
21 and honest, and forthcoming.  And I did leave a message with
22 her.  She didn't call me back.  She didn't address it at all.
23 The first I heard about it was when I was in court and it was
24 read to me, and I just -- it hurt.  And I was disappointed.
25 Disenchanted, really, in the probation system.  I felt like

1  she let me down.
2         The contact with the minor, if you're interested, it
3  was incidental contact. It was purely incidental. In other
4  words, it just happened. I didn't foresee it. It wasn't
5  foreseeable. It was at a family event. We decorate graves
6  once a year, and he just happened to show up. No one knew he
7  was going to come, other than his mother. So an incidental
8  and public contact are expressly allowed as exceptions to the
9  rule of contact with minors. That's why I didn't agree that
10 it's actually a violation. I hope that's clear.
11         Otherwise, I certainly accept whatever outcome that
12 you recommend, because I do realize my mistake.
13         THE COURT: Thank you.
14         MR. BROWN: And he would like, if you could, I think
15 Missouri.
16         Or where did you want?
17         THE DEFENDANT: Well, if you do recommend that, I
18 would prefer to finish the time in St. Genevieve County in
19 Missouri. It's close to home. It's a facility that I started
20 at and --
21         THE COURT: Thank you.
22         And just to be clear, this probation officer you are
23 talking about is in the Western District of Missouri, or where
24 is that person?
25         THE DEFENDANT: Eastern District of Missouri.

1  THE COURT:  Eastern District?
2  THE DEFENDANT:  Yes, sir.  Miss Burrows [phonetic].
3  THE COURT:  Anything from the government?
4  MS. WANNARKA:  Yes, your Honor.
5  First of all, it is in the government's interest and
6  in the victim's interest that the defendant continue with the
7  treatment that he's in and continue with the therapy and the
8  group therapy and everything that he's doing, because that is
9  singularly the only way that it will ever be possible for him
10 to stop exploiting this victim.
11 But I do want to highlight for today, because we've
12 got to talk about it, and while it's not an official violation
13 of his conditions, one of the things that he was looking for
14 while on a computer internet are pictures of the victim.
15 Again.
16 And recall at sentencing, he had posted pictures of
17 this woman online and she asked him to take them down.  He
18 wouldn't.  She had to sue him.  And she sued him in district
19 court, state district court in this county, and got a judgment
20 and an injunction, and stop posting pictures of this woman.
21 He didn't.  He posted them again.  And he's
22 identifying her, where she lives, what she does, who she works
23 for.  He did it a second time.  She sued him a second time in
24 district court, got a judgment and an injunction.
25 A third time he posted pictures of this woman.

Again. Identifying her, saying where she works, utterly terrorizing her. She sued him a third time, got a judgment and an injunction.

Well, we are here because he continued to post pictures of this woman and identify her. And that's when the FBI got involved and he was prosecuted here in this courtroom. And, in fact, the judge sentenced him to the high end of the guidelines, 41 months, because of the egregious conduct of this person to this victim.

And so what's notable, that hasn't been talked about yet, is while he was illegally on multiple computers with internet access -- not illegally, but in violation of his probation, he's looking for her pictures that he posted. And guess what? He found them. There were naked pictures of her that he had previously posted on laptops that were seized from probation in Missouri.

So I don't know what it's going to take to make him stop exploiting this woman, but -- and it's not jail time. It's the therapy. That being said, I do think there needs to be more jail time. I think violating conditions of release by revictimizing your victim has got to hurt and it's got to mean something.

He's been in for two months. The government is asking for five months with the credit for the two months. The government is asking that he serve three more months in

1  custody to get his mind right so that when he gets out on
2  supervised release, which we want him to come back out on, to
3  go back into the treatment.  We want him to successfully
4  complete the treatment.
5          Additionally, so that it is crystal clear, we want to
6  ask the court to restrict all usage of any computer for any
7  reason, any internet access, unless permission has been
8  extended by the probation office for those times when he's got
9  to apply for some sort of governmental something.
10         THE COURT:  Well, I was going with you until you got
11 to that point.  I mean, in this day and age, how do we
12 restrict people from any access to the computer?
13         MS. WANNARKA:  Without permission.  If he needs to
14 file his taxes, he can go down to the H&R Block in the HEB and
15 say, here's my taxes, I need to file them.  But he can do so
16 with knowing that the probation officer knows he's going to do
17 that.  But the thing is, is that he has not demonstrated an
18 ability to have internet access without exploiting this woman.
19         MR. BROWN:  Your Honor, he was going to answer one of
20 the things that --
21         Tell her what you're saying.
22         THE DEFENDANT:  Well, I don't know.  I feel like
23 that's a gross misrepresentation of my recent actions.  I did
24 not exploit this -- Miss T.  I will call her Miss T -- this
25 last time around.  I learned a lot in prison.  And one of the

1  things that the prosecutor pointed out was I was looking for
2  pictures that I had posted.  There are -- I found no pictures
3  that I had posted, because --
4          THE COURT:  Well, wait a minute.  So I've got a
5  report, January 22, 2019, from the probation officer there in
6  the Eastern District of Missouri, and they did a forensic
7  investigation and that computer indicated that you did do
8  searches for YY [verbatim].  You did searches on how to wipe a
9  hard drive.  There were pictures of YY, bookmarks, and
10 numerous email addresses.
11         THE DEFENDANT:  That's correct.  I did look for the
12 photos.  I mean, the one thing that I was hoping, after having
13 spent the time in prison, was that my efforts to remove her
14 photos -- I made efforts to get photos removed, not the ones I
15 posted, because those were gone, other photos that just wound
16 up, you know, they just wound up on other websites.  It's just
17 the nature of the, you know, the internet.
18         So I was hoping two things.  One, that my efforts --
19 I sent emails to Webmasters demanding that they remove the
20 images.  I was curious.  That's the first thing I did.  I went
21 to my email.  I went to those emails and I checked their
22 links.  I wanted to see if they were removed.  I was hoping
23 they would be gone.  I was also hoping that the passage of
24 time would also delete the images.  I found both of those
25 things to be true, for the most part.

1  The reason I downloaded the images was so that I
2  could do image searches and see where else the images were.  I
3  wanted to -- I wanted the images to be gone.  It's just
4  completely wrong to say I exploited her this time.  It was
5  just the opposite.  I wanted the images to be gone and I made
6  the effort to see whether they were, but that's all I did.
7  THE COURT:  Well, so, I mean, the reality is, moving
8  forward now, you've just got to forget about this lady.
9  THE DEFENDANT:  Yes, sir.  That's what I'm working
10 on.
11 THE COURT:  And if you're trying to comply with her
12 demands that you remove images, you need to outsource this.
13 You need to give this task to somebody else.  You just need to
14 not be involved anymore.  And I never understood the
15 obsession.
16 The government's motion to revoke your supervised
17 release is granted.  The defendant's supervised release is
18 hereby revoked.  Pursuant to the Sentencing Reform Act, it's
19 the judgment of the court that the defendant be remanded to
20 the custody of the Bureau of Prisons for a period of six
21 months without credit for time previously served on
22 supervision.
23 Upon release from imprisonment, you'll be placed back
24 on supervised release for a period of three years.  You will
25 comply with the mandatory and standard conditions adopted by

1   the court November 2016 with the following special conditions:
2   You will participate in sex offense specific treatment
3   programs, and subject to periodic polygraph testing at the
4   direction of the probation office.  You will pay for such
5   costs, if financially able to do so.
6           You will not view or possess any visual depictions,
7   including photographs, films, videos, pictures, or any other
8   like computer generated images of sexually explicit conduct.
9           You will not have any direct contact with any child
10  that you know or reasonably should know to be under the age of
11  18 without the permission of your probation officer.  That
12  will exclude your own children.
13          You will not go to or remain in any place where you
14  know that children under the age of 18 are likely to be at,
15  including parks, schools, playgrounds, and childcare
16  facilities.
17          You will not access the internet, except for reasons
18  approved in advance by your probation officer.
19          The probation officer will be allowed to install
20  computer monitoring software on any computer devices that you
21  may use.
22          You are to submit your person, property, house,
23  residence, vehicle, papers, computers, or other electronic
24  devices to search by a probation officer.
25          You are prohibited from having any direct or indirect

1  contact with Y, or members of her family, including contact by
2  person, mail, telephone, or any other form of communication.
3       You have the right to appeal the sentence imposed in
4  this case.
5       Anything else from the government?
6       MS. WANNARKA:  No, your Honor.
7       THE COURT:  Mr. Brown?
8       MR. BROWN:  And I know he doesn't get credit, but he
9  gets credit for the two months he's been in jail though; is
10 that correct, your Honor?
11      THE COURT:  Yeah.  You'll receive credit for whatever
12 time you were picked up on this offense --
13      MR. BROWN:  For this offense.
14      THE COURT:  -- and then I'll make a recommendation
15 that you be placed in a facility in Missouri.
16      MR. BROWN:  Thank you, your Honor.
17      (Concludes proceedings.)

```
 1                              o0o
 2                           CERTIFICATE
 3   I, Gigi Simcox, RMR, CRR, Official Court Reporter for the
 4   United States District Court, Western District of Texas, do
 5   hereby certify that the foregoing is a true and correct
 6   transcript, to the best of my ability and understanding, from
 7   the record of the proceedings in the above-entitled and
 8   numbered matter.
 9
10
11                        s/Gigi Simcox, RMR, CRR
                          Gigi Simcox, RMR, CRR
12                        Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25
```